May it please the Court, Counsel. Gregory Nakai didn't get a fair trial. He didn't get a fair trial because the government proceeded on a theory of liability that does not exist in the law, federal criminal law in the context of this case, and of which the defendant had no notice. He didn't get a fair trial because the- He got seven days notice. He got a week's notice. What's the difference? Well, actually, he didn't even get a week's. He was on notice when the government offered its proposed jury instruction to the trial court. Quite honestly, I don't remember exactly when that was. I know it was not earlier than a week before the trial. A week, I believe. One of the problems with what the government did here is that if where the theory is conspiracy, there are a number of things that the defendant needs to know about the conspiracy in order to defend it. Was there any doubt as to what the main effect had been and what the time had been and all that? Well, there- There wasn't any mystery about that, was there? There was doubt, for example, about what the object of the conspiracy was. There were several crimes that could have been alleged as objects of the conspiracy. The government kind of threw them all up there, but there was doubt in this case, for example, about what the objects were. When was the agreement, the so-called agreement, made? What was the scope of the agreement? What was the duration of the conspiracy, and could there have been a withdrawal? All of those things- But I tell you, the defendants knew what the government was saying they had done. The defendants knew what the government was saying they would have done. That's- Had done. That's true. But the- if a conspiracy had been charged, the preparation of the case would have been different. There would have been a focus on whether there was an agreement between the defendants. There would have been a focus on whether Gregory Nakai was part of that agreement. For example, the government presented the testimony of the co-defendant, Jimmy Nakai, to the effect that my client, Gregory Nakai, said, let's jack them up, and then this sequence of events started. Jimmy admitted on cross-examination that he had never- he had not said that before. He was impeached on that point. So that was a key point in the case. If a conspiracy theory had been in the works from the beginning, then that's certainly something that would have been a focus from the beginning, whether there had been a conspiracy that Gregory Nakai was a part of. Well, if we follow at least what some of the other circuits have said, a conspiracy is just inherent in any indictment, any indicted charge, just like aid and abet is, and Pinkerton applies. So if it's true that it's just inherent, it's hard to see how it's unjust if you don't specifically mention it. Judge, first let me suggest that, although there are other circuits that have said that, let me suggest that this Court should not follow those circuits. Here's the problem with those cases. There is nothing in the criminal code, in the federal criminal code, analogous to Section 18 U.S.C. Section 2 that creates a general theory of liability. Section 2 clearly says that aiding and abetting applies, and aider and abetter is held liable as a principle. There is, if Congress had meant for conspiracy to be a similar theory of general application, it would have said so somewhere, and it's not there. Pinkerton interprets Section 371. Stapleton, the Ninth Circuit case that talks about mail fraud and wire fraud, the scheme Pinkerton type liability under the scheme offenses, interprets the mail fraud statute, Section 1341, and the wire fraud statute, Section 1343. The Fifth Circuit habeas case, Jacobs, if you look at that case, they're interpreting Texas law, and you'll see that Texas does have a statute that's analogous to the federal aid and abet statute. I don't think Judge Fernandez suggested that we are bound by our own precedent. He was saying there are other circuits that think you don't have to allege a conspiracy in order to use the Pinkerton theory or the conspiracy theory. And I think you should – and you are suggesting that that's not a view of the law that we should adopt. That's right. So perhaps what you should do is try to persuade us that conspiracy is in fact different, that it is in fact a more serious offense often than the substantive one, that it can constitute a felony because of the mere fact of agreement, even if the underlying offense is only a misdemeanor, that to conspire to commit a misdemeanor can be a felony, so that conspiracy is not like simple aiding and abetting. That kind of argument might be helpful. Well, I have to confess, Judge, that I don't – I'm not sure exactly where you're going. I'm asking you why is it that we should not say that you can convict somebody for a conspiracy if you don't plead it or allege it? Because there has to be something that – Congress has to have intended that a person in my client's situation could have been convicted based on a theory that co-conspirators or co-schemers committed acts for which he was responsible, even though he did not intend them. It comes – the difference is mens rea. Under an aid and abet theory, the government has to prove specific intent to aid or abet or assist the underlying offense. Under a Pinkerton theory, that is not the case. All they have to show is that there was an agreement and that the substantive offense was foreseeable in the course of the conspiracy to the conspirator. Now, Congress did say that aid and abet can be a theory under individual statutes. What the implication of the government's argument here is that when Congress enacted, say, Section 1111, the homicide statute, that Congress intended that a person could be liable under that statute on a Pinkerton vicarious liability theory. That's the implication of what they're saying. And what the only case – If there had been a conspiracy count charged and then a substantive count, could he not have been convicted on the substantive count? Yes. That's what Pinkerton says. Yes. Okay. So Congress – your argument isn't that Congress didn't intend that he could ever be convicted. Your argument must be that you have to plead and charge a conspiracy. That's right. That if they pled and charged conspiracy, that then as a corollary of Section 371 of the conspiracy statute that Congress enacted, then they can get vicarious liability as well. The question is also whether without conspiracy can you use Pinkerton for aid and abet, which is what some circuits seem to have said. Whether you can use – well, Pinkerton is not aid and abet. Pinkerton is different from aid and abet. And to the extent that the circuits have said they're the same, they're wrong. I'm with you on what somebody can argue. But I'm saying – but that is the second piece of it, isn't it, that they say that you can use Pinkerton to show aiding and abetting, or vice versa. On an aid and abet theory, you can prove up counts with Pinkerton. So I'm aiding and abetting you committing a crime, and along the way while you're committing it, you commit a second crime. And they're saying, I think, well, even though they may not be able to demonstrate I did the second crime, they can use Pinkerton to say that I am hooked into aid and abet anyway, right? I mean, that's what they seem to be saying. Am I correct? Yeah, I think you're right. But the reason that's wrong, Judge Fernandez, is that, again, aid and abet is a specific intent crime, and conspiracy is not. Let me make one other point that I don't think was in my brief. Under Carter v. United States, 530 U.S., 255, the Supreme Court talks about when the common law is imported into the Federal Criminal Code as a matter of interpretation. What Carter says is that the common law helps define terms that are not otherwise defined in the code, that when Congress uses a common law term that it does not otherwise define, it imports the cluster of ideas that surrounds that term. That applies perfectly to what we have here, because Section 371 does not outline the elements of conspiracy. It uses the word conspire. And if conspiracy or conspire under the common law meant that you could have vicarious liability for the acts of co-conspirators, then under 371 it follows, logically, that the government could pursue a theory of liability for foreseeable substantive offenses committed by co-conspirators. Suppose the government said, okay, let's say you're right. I shouldn't have given a conspiracy argument or concept. But if it's there, it's clearly harmless, because the evidence is powerful that he didn't just conspire. He pulled the trigger on one of the decisions. He actually pulled the trigger. He was there. He was doing it. I mean, he was aiding and abetting in spades, let's say. So conspiracy, no conspiracy, no big deal. Suppose that argument's made. What's your answer? My answer is, as to the shooting itself, the government could not show beyond a reasonable doubt. Even if you assume that my client shot, fired shots at the point that he did, they were not able to prove that that person was still alive at that time. It's not a jury. It's not a very palatable defense for a jury. But it was a defense that was clearly viable and that was argued by us, in fact, on a Rule 29 motion, because what had happened was that Mr. Orsinger, the co-defendant, had been beating this victim mercilessly as these people drove toward the scene of the shooting, and Mr. Nakai, Gregory Nakai, was not even in the vehicle where that was happening. Mr. Bernays misspoke that the lead car contained Gregory Nakai and Johnny Orsinger. That is not correct. The lead car in which the beating was taking place contained Johnny Orsinger and Jimmy Nakai. So as to that specific point, Judge Fernandez, the evidence, there was clearly a theory under the evidence that that individual was dead when he was shot, therefore there was not a homicide. Backing up to the beginning, if you take into account everything that Jimmy Nakai said and the statements of Gregory Nakai that were excluded by the trial court, you could have the following theory, that Gregory Nakai was merely present when the others decided to commit a carjacking, attacked these victims, tied them up, drove them up the mountain. And the reason I say that, Judge ---- Well, wait a minute. You're trying to tell me why there's not harmless error in terms of the instructions. I don't think you should be telling me about evidence that was excluded to prove that. Okay. Well, the bottom line is that the facts as they were presented to the jury would have supported a theory that Mr. Nakai was merely present, that he was so intoxicated that he could not have formed specific intent to commit those crimes that required specific intent, and that the one act that the evidence does show fairly definitely he did commit was not a homicide. Let me get to the statement, to the issue for a minute, of the exclusion of the so-called exculpatory portions of Mr. Nakai's statements. The results of the post-arrest questioning should have been presented to the jury in a manner that was fair to the defendant. The parts that were excluded from the one statement, from the ---- I shouldn't call it a statement. From the description of the interrogation by Agent Purcell was Mr. Nakai's statement that he started drinking more after the car had been wrecked. The portion of the interrogation by St. Germain that was excluded was I freaked out and after Mr. Orsinger had shot the first individual. Both of those negated specific intent. They negated premeditation. And the government, and that's not fair. I don't get that. He says, I freaked out, and so that negates the specific intent. And beyond that, he gets to slip that in without having to be cross-examined or anything, right? He just gets to slip in his out-of-court statement, I'm not responsible because I freaked out. Is that right? Is that what you're suggesting? It sounds like it. Well, first of all, it's all one statement. And the government ---- it's all one piece of evidence. And the government is not entitled to introduce part of it and not another part. What they did ---- I thought when I interrogated somebody, I could introduce the parts where he admitted his crime, but I didn't have to introduce all the parts where he didn't. Are you saying that's not true? Yes, that is not true. The ---- What's the best case that stands for that proposition? The best cases for that are both Collicott and Ortega say that the portion ---- the excluded portions of the evidence were not integral to the understanding of what was admitted. And factually, in both those cases, you can see that that's true. Ortega is the best example because the defendant admitted, yes, I had the drugs and I had the gun. What was excluded was his statement about where he got the drugs and the gun and what he knew about some other things that were in a garage, neither of which were explanatory as to his statement that he possessed the guns and drugs. Here, the statement ---- But Ortega ---- I don't see how Ortega helps you. What you're saying is you can distinguish Ortega. But Judge Fernandez asked you about a case that said, yes, you must let in the testimony that helps the defendant if you allow in the inculpatory. The cases from ---- well, the rule in the Second and Seventh Circuit that I've cited to the Court, the same rule exists in the First and the Eighth and the D.C. Circuits that the judge in his discretion has to allow the evidence to be admitted under whatever theory, Rule 106. I don't know if that means he must in his discretion allow it. That means in his discretion he can disallow it. But it's an abusive discretion when the result is not fair, and that's what happened here. He must allow it. He doesn't have discretion to disallow it. He has discretion to control the presentation of evidence so that the presentation is fair to the defendant. That does not mean that ---- and he clearly did that because he said that the Rule 106, the rule of completeness, required the defense to introduce a part of the co-defendant statement on impeachment that was in addition to the part that the defendant wanted to ---- Let me just ask again. What is the best case that says you must allow the defendant's exculpatory evidence in the statement and when you allow the inculpatory? What's the best case that says that? The ---- I'm going to argue with the framing of the question, Judge, because the principle in all of the cases is that the ---- what is admitted has to be enough to place what the defendant said in context so that the jury can fairly understand it. I'm asking you, is there a case in which that was said, in which the Court said, yes, you must allow in the defendant's exculpatory material, that it was error to exclude it? Yes, that's the ---- Okay. That's what we're looking for. That's the case that I cited in the reply, and the name of it is ---- All right. I'll tell you what ---- The name of it is United States v. Benveniste, 564 F. 2nd, 335. Can you reply, please? Yes, sir.  All right. Well, we'll give you about a minute or two for rebuttal because you're a little over already. Okay. May it please the Court, it was not error to give Pinkerton in this case. The Pinkerton decision even analogized the liability under Pinkerton to that of aiding and abetting. And I think clearly in the facts of this case, there was one date charged. There was one series of events charged. There were a finite number of players charged. There was no objection prior to trial, even though the government had set out its notice in the jury instructions of its intent to proceed on a Pinkerton theory. There was no objection to any of the evidence coming in that it was part of a conspiracy. Conspiracy wasn't charged. The first time that it was raised was during the Rule 29, at which time the argument was made that you cannot give Pinkerton without a charge conspiracy. Is it your argument that you never have to indict for conspiracy, just substantive offense is good enough, it includes conspiracy, or are you saying that Pinkerton can be used for aid and abet, or are you saying both? Your Honor, it's – if the rationale that aiding and abetting is implied, and there's a similarity between aiding and abetting and Pinkerton. But the answer to Shenanda's question is you're not saying Pinkerton is used for aiding and abetting, you're saying it's an analogy to it. It is an – correct. I'm sorry. It is an analogy. It is not used to – aiding and abetting is separate and distinct. It is a theory of proof. Pinkerton is a theory of proof. There are alternate approaches. Alternate theories of proof, and depending on the facts, one can find aiding and abetting and not the conspiracy, or – But this is a conspiracy question with Pinkerton, right? Pardon? This is conspiracy, not aiding and abetting, when we're talking about Pinkerton. Yes. Your Honor, to focus your answer, isn't it essential that you're using Pinkerton, that they – you have proved a conspiracy? And the defense objects, then, well, what was the conspiracy when you didn't charge it? What was the conspiracy? In this particular case? Yes. The conspiracy began the moment someone said, let's jack this car, and the rest of the – That was – now, you say that from the – you were sort of going on the facts. The conspiracy was to commit a carjacking. Yes. Was it to commit murder? At the end of the – it was a conspiracy to commit carjacking, the kidnapping, the robbery. Were there several conspiracies, or what was the – No, there were several objects to the conspiracy, because once they took – And it included murder? At the end of the day, yes. They had to – because when they took the car – when they took the car by force, it had to end somewhere. And there was a gun – Well, I know carjackings don't always end in murder. They do not. In this case, it did. But why do you say it had to end there? Let's assume for a moment the – these people have been around drinking, saying, let's carjack it. And they make an agreement. You can say, well, you have a witness saying that. At what point do they agree to murder the victims? Your Honor, in this case, the agreement – the conspiracy that was proved was to carjack and subsequently kidnap. No, no, you can't wish it on me. At what point do they agree to commit the murder? There is no evidence in the record that there was a conspiracy to commit the murder. There's no evidence that any things were said. They were – they were – So I think that makes it awfully difficult, as counsel pointed out, to defend when we don't know what the conspiracy is, except at the – what it looks like you have at most is a conspiracy to do a carjacking. Your Honor, I would offer that. Then what does – what happens in a case where a co-conspirator statement and an uncharged conspiracy is allowed in? Well, I know we have – well, there are anomalies in the law. Conspiracy, I think to quote a famous judge's statement, is the darling of the prosecutor's nursery. And I don't know that we should go on giving the darling more and more benefits. But, Your Honor, as far as – and the court certainly has a point about the conspiracy to commit the murder. But clearly because these two committed their own murders, that certainly the jury was justified in finding that Gregory Nakai committed premeditated murder to kill Jesper Sam. Well, I – one thing to prove premeditated murder and another to prove a conspiracy to commit it. But – When you haven't charged it. Why didn't you charge it if you thought it was true? Your Honor, as the court is aware of it, because there was no objection down below, there's no evidentiary hearing. And all I can offer the court is that sometimes as cases are put together and come to trial, different thinkings occur. Well, the question really is – first, the question in this case is should we adopt a rule that some circuits may have adopted that says that you can use a conspiracy theory to convict somebody if you haven't pled a conspiracy? If the answer to that is yes, that's the end of the problem. If the answer to that is no, then we get on to Judge Fernandez's question, which is, in this case, did it make a difference? But I think we first have to resolve the question that's really presented by this case of whether we should allow what Judge Noonan described rather colorfully as an additional weapon to the prosecution to convict people on a conspiracy theory without charging the conspiracy. Your Honor, I can only offer that other circuits certainly have looked at this matter. They have – there isn't, as far as I know, an opinion out there that has found fault with this type of – We have the opportunity, right? I guess that's – The Third Circuit did it pretty summarily. I'd been more impressed if the Third Circuit had told us why – what their reasoning was. Your Honor, I guess, you know, I'm confined. But this case presented it nicely and neatly in this case because everything was there. There was never an objection to anything. There was no evidence that came in that shouldn't have come in because there was an uncharged conspiracy. But if one can bring in co-conspirator statements without a conspiracy, if one can be convicted of liability with an acquitted conspiracy, then the facts of the case that as long as the jury finds the conspiracy as they're instructed and finds the alternate theory of liability, then where's the error? I take it the theory is the person cannot be convicted of conspiracy because that was in charge, correct? Correct. He can't be convicted of that. Correct. So the person is – can only be convicted of substantive offenses arising out of the conspiracy. Correct. And without charging – without proving that he was an aider and a better, you can then simply say, well, he agreed, though, that something could happen and this was then the reasonable – this was reasonably foreseeable. So he agreed that they could carjack and it was reasonably foreseeable. That was all he agreed to. It was reasonably foreseeable that they would then slaughter these people. If that was reasonably foreseeable, yes, because that means that he had to have some awareness that there was going to be violence attached to this. If it was a matter of I'm going over and taking that car, I'm going to steal that car and we'll go for a ride, there's nobody there, and someone showed up and there was violence imposed, that may not be the case. Well, gee, I thought I'd see conspiracy charges that did things like that, that said things like, you conspired to carjack so-and-so's car and everybody knows that when that occurs you might have violence occur. Ergo, you're responsible for any violence that occurred, because it's foreseeable that there could be violence. So that's what you're saying now? Without charging conspiracy, you can just say, well, it's reasonable. Any time there's a carjack, it's reasonable there's going to be violence, and therefore, without charging conspiracy, you're responsible for the violence even though you didn't agree to it? But there's still this. Right? Yes. But in the charging. Was the answer yes to that? I'm sorry. Was that the answer, yes? I meant to. Judge Fernandez asked you a question. You said yes. Is that right? I'm not clear, Your Honor. I was going to add something to what Judge Fernandez said as he was speaking. Something came to me. I may have misheard what the judge said. Do you need the question repeated? Please. Who's going to do that? It happens to Betsy. How would I ever repeat that? I'll let you do it unless you want me to. Do you want to try Judge Newman? He'll give you a question. The question is, if you agree to a carjacking, does that mean you agree to any violence that will then erupt in the course of the carjacking? If it's foreseeable, yes. Because carjacking by any ñ It isn't foreseeable. I've known survivors of carjacking. But carjacking is a ñ I'm sorry. Not every carjacking is a murder. But carjacking is ñ no, it's not murder, but it's violent. The carjacking is ñ All right. Well, no. You can ñ people just move over. That's not ñ Step the back to the other. The man has a gun. I mean, it is a violent sort of thing, but it's not murderous. But if you go over to someone with a gun and get them to slide over, the foreseeability of that gun being used is there. You would say at that point there were two of them. They had conspired to commit murder. They conspired to do the carjack. They conspired to commit murder. It's reasonably foreseeable. Well, if you had put in a conspiracy charge, you indeed would say that we can then add a substantive offense of murder, right? Because you could reasonably foresee that that could occur. Yes. That's right? Yes. And you're saying that's what we should do without a conspiracy charge, correct? And maybe I'm missing the difference, that with the nature of the charges that were part of this case, everybody was on notice that murder was part of this case, kidnapping was part of this case, carjacking. There was nothing new added, nothing argued that was not part of this indictment. Except that they had no charge of conspiracy. Exactly.  So the thing is, should we dispense? You know, conspiracy is bad enough, as Judge Newman said. Should we also now dispense with the necessity to even charge it? To say, well, everybody knows if you do it together, it's a conspiracy. So why bother to allege conspiracy? Because in many cases, oftentimes it is easier to lay certain things out in a conspiracy count. So it's not doing away with it. But why do you ever bother to do it? Once you plead the offense, you say you've done all you need to do to show a conspiracy, to allege a conspiracy. I'm not suggesting that we have to do away with it. I'm saying that in cases where there is an uncharged conspiracy and there is evidence  I'm not saying dismiss conspiracy charges. No, no. What I'm saying is why bother to plead it unless you want an additional conviction? Well, when you charge conspiracy, sometimes it's a little easier to start out and allege certain factors or events for the jury to follow. Then the other side knows you're alleging all those things as part of a conspiracy. And then they're going to be held liable for the acts of all the other conspirators. That's what you tell them when you put it in the indictment. Yes. And here it's not there. But under the alternate theories pursued by the government, direct and aiding and abetting liability, he was also liable for those acts. Well, that gets to harmless error. Yes. That doesn't get to whether it's error. Yes. Could I ask you a question about the evidence of conspiracy? Counsel for the defense said that Jimmy testified, let's do a carjacking. But then the argument was made that he was impeached on that. Is that true? The question was who said it. Yeah. Jimmy Nakai testified that the defendant said it. Yes. The impeachment on Cross was that the witness had never said it was Gregory before. The statement was made by somebody. Did he retract it? No. The statement that let's jack the car was never retracted. But who said it was left in doubt? My recollection is that while he was impeached, that he had never said it before, I believe, and I'm just going off the top of my head, that he stuck with the story that it was Gregory. But I will say that. Well, we can check that. Certainly. But the evidence shows is that the statement was made. By somebody. By somebody. And in response, the defendant slugged the first victim, knocked him to the ground. He was not an innocent bystander. I think you're convinced of that, that he's not a bystander. And all the way down that while who did what tying up and everything else. But he clearly followed along. He lived very close to where this took place. He certainly could have taken his car and gone home. He took it to follow the car jacked vehicle. He's the one who got out and said, you guys stay here. I'm going with the. Terrible things were done. Some of these people behaved terribly. But the question was who did what. By the end of this, I think it's pretty clear who did what. By the time Gregory Nakai got back into the blazer, he was now in the kidnapping. If he wasn't in the kidnapping before, he now put himself in the kidnapping. He helped get these tied up victims out of the car. He shot and killed one of them. He knew in light most favorable that it was a gun, it was actually his gun, that Johnny Orsinger had. So he participated at some point in all of the carjacking and the kidnapping. The robbery and the murder. And in his acts afterward, he helped to burn the bodies. He helped trade tools so he could get tires for his poor car. What about the actual shooting? He shot one of the victims, correct? Five times, Your Honor. Right. Now, they say, yeah, but. I don't know whether he was alive or dead. That was argued. The argument was that because they didn't see movement, he had been beaten in the back of the head. But because of the decomposition and the burning of the body, the medical examiner could not reach any conclusion about whether he would be alive or dead. Well, that was rather irrelevant. So it was put to the jury and argued, and the jury found murder. Possibly on a conspiracy theory. I don't think, Your Honor, on this case, when you put five bullets on someone, I don't think you have to look to the conspiracy to convict. Well, then we shouldn't have given a conspiracy instruction if you didn't need it. You know, the problem we get into in these cases every time is when you do things, we then say, well, we didn't really need to do it. It's just overkill because we want to get them three times. But, you know, if you say it was so clear, this all could have been avoided without trying to say, but maybe he didn't do it, but you can get him for a conspiracy. If you had it to do over again, you'd leave out the Pinkerton instruction. Perhaps if we had to do it over the, you know, Your Honor, we could suppose perhaps we would have done the indictment. Or you'd charge him with a conspiracy. But given what we understood to be the case law, and Judge Below saw the case law, I think it was appropriate under the circumstances of this case. And very briefly, as to the statements that were allegedly excluded under the defendant's theory, every time the defendant says, oh, by the way, I didn't do it or I was drunk or I was mad, you would have to put his statement in because it would be fair. And that's not the test. Well, could I pursue the question on the conspiracy? No. The jury could have found murder in that somebody beat the victim over the head and that killed him. And then they could have convicted everybody because they conspired for the murder. And they wouldn't be depending on the shooting. So if there was doubt as to whether the victim was still alive, you did need conspiracy to get this man for shooting. I'm not – are you saying because he may have been dead prior to the shooting and someone else did it? Well, somebody beat him over the head. Your Honor, I think if you look at the verdict, I believe that this defendant was specifically found to have caused the death of Jespert Sand by use of a handgun. But they could have done that on Pinkett and Buskis. No, I don't think – no. Because interestingly enough, they did not find it as to the co-defendant. They what? They did not find a 924J conviction as to the co-defendant. They actually did. They gave a 924J to each defendant for the person they shot. I see. So I would submit that that was a direct finding that the defendant shot and killed. Actually did the shooting. Yes. Of a live person. Yes. Okay. If there are no further questions. Thank you, counsel. Thank you. Counsel, what's your response to the last point that the jury verdict shows that it was harmless because the verdict shows that they found him guilty because of the shooting? The response to that is that requires the government – excuse me – to read the minds of the jurors to determine why they returned the verdict the way that they did. They simply can't draw the conclusion that they drew without presuming to know why the jury returned a particular verdict, and they simply don't know that. The test here is that the government has to show the error was harmless beyond a reasonable doubt, not that there was enough evidence to support the verdict on another theory. If you look at the impeachment of Jimmy Nakai, he was impeached not only on who said, let's jack it up. He was also impeached on his testimony that Gregory Nakai was the first assailant against one of the victims. In fact, that Gregory Nakai participated in that at all. His statement to the police had named other people. It was only his testimony at trial that said that Gregory had done that. The testimony was that Jimmy Nakai got out the gun. The testimony was that Gregory was in the trailing vehicle too drunk to drive his own car and got in the blazer only when the car that he was riding in had been wrecked. The testimony that Gregory helped take the victims out of the car was only Jimmy Nakai's testimony, and that was thoroughly impeached. And the testimony was that the victim was not moving at that time. And it was objected to in advance. If you look at the excerpts on page 97, we did object before the judge settled the instructions. Thank you, counsel. Case just argued will be submitted. The court will stand in recess for the day. All right. The court stands in recess until tomorrow morning. Thank you. Such big steps. Thank you. Thank you.
judges: Reinhardt, Noonan, Fernandez